1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| JANOPAUL + BLOCK COMPANIES, LLC; JANOPAUL BLOCK S.D. NO. 1, LLC, | CASE NO. 11-CV-0878 JLS (WMC) |
|---|---|
| Plaintiffs, | **ORDER: GRANTING MOTION TO STAY** |
| vs. | (ECF No. 7) |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY; and DOES 1 through 500, inclusive, | |
| Defendant. | |

   Presently before the Court is Defendant St. Paul Fire and Marine Insurance Company, et al.'s ("St. Paul") motion for partial summary judgment or, in the alternative, to stay this action. (ECF No. 7.)  Also before the Court are Plaintiffs Janopaul + Block Cos., LLC, and Janopaul Block S.D. No. 1, LLC's ("Janopaul") opposition (ECF No. 13) and St. Paul's reply (ECF No. 17). The motion hearing set for November 17, 2011, is **HEREBY VACATED**, and the matter is taken under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  Having considered the parties' arguments and the law, the Court **GRANTS** Defendant's motion to stay this action pending final judgments in two related pending state actions, and **DECLINES TO RULE** on Defendant's motion for partial summary judgment pursuant to this stay.

//

//

# BACKGROUND[1]

A web of prior suits arising out of defective construction work on the El Cortez building in San Diego, CA, underlies the instant motion. A timeline of relevant events involving many different parties and actions in San Diego Superior Court is discernable from the parties' moving papers, although it is far from clearly explained. Because understanding the factual and procedural history of these prior suits is integral to the resolution of the present motion, the Court attempts to set forth this history in some depth here.

Plaintiff Janopaul is a California corporation that purchases, renovates and develops property for residential uses, among other things. Defendant St. Paul is a Minnesota corporation that provides insurance policies to various entities, including construction contractors.

In 1998, Janopaul purchased the El Cortez building for development into apartments or condominiums. In May of 1998, Janopaul entered into a contract with Ninteman Construction Company, Inc., which later became known as Sundt Construction, Inc. ("Sundt"), to undertake the planned renovations. Sundt performed construction work and hired and supervised sub-contractors' work on the building. Sundt was covered under a series of general liability policies by St. Paul, effective between October, 1997, and October, 2004. Under Sundt's contract with Janopaul, Sundt provided Janopaul some form of insurance coverage through St. Paul, the nature of which the parties contest.

Several lawsuits in San Diego Superior Court arose out of deficiencies in the construction performed and supervised by Sundt on the El Cortez building. In 2005, Janopaul sued Sundt, alleging a breach of contract as a result of the construction defects. In 2006, the El Cortez Owners' Association ("Association") sued Janopaul and Sundt, alleging various causes of action arising out of the same construction defects, and Janopaul filed a cross-complaint for indemnity against Sundt. In 2007, the Association filed several other related actions against Janopaul regarding a lot adjacent to the El Cortez building. These various actions were all eventually consolidated into one case in San Diego County Superior Court ("the consolidated case").

---

[1]The facts in this Background section are undisputed facts taken from the parties' separate statements of undisputed material facts, unless otherwise noted. (*See* Pl.'s Resp. to Def.'s SSUMF, ECF No. 14; Def.'s Resp. to Pl.'s SSUMF, ECF No. 17-1.)

For claims against them arising out of the construction defects in the consolidated case, Sundt and Janopaul both tendered defense and indemnity claims to St. Paul. St. Paul provided a defense to Sundt, but failed, at least initially, to defend Janopaul. Janopaul was represented throughout the consolidated case by the law firm Golub & Morales. As to the extent of St. Paul's duty to defend or indemnify Janopaul in the consolidated case, and the extent to which St. Paul eventually provided such defense or indemnification, the parties disagree.

At various points throughout 2010, the parties entered into settlement agreements regarding some of the claims in the consolidated case. As part of the terms of their settlement, Janopaul agreed to pay the Association proceeds that Janopaul recovered from Sundt, up to $600,000, exclusive of attorney's fees and costs. In connection with these settlement negotiations, Sundt agreed to pay a sum of $300,000, but the parties now disagree as to the nature of this sum. Janopaul believes Sundt agreed to pay the sum to Janopaul, while St. Paul contends Sundt agreed to pay the sum to the Association, and that Janopaul retained a right to pursue Sundt for attorney's fees and costs.

Janopaul continued to assert in the consolidated case that Sundt owed fees and costs through an indemnity provision or a prevailing party provision in the construction contract between them. On December 17, 2010, Janopaul filed a motion against Sundt in the consolidated case seeking recoupment of its outstanding attorney's fees and costs in that case. Janopaul alleged that it had incurred $3,172,079[2] in attorney's fees and costs in the consolidated case, of which $2,349,068 had previously been paid by insurance carriers other than St. Paul. Janopaul also claimed it was entitled to interest in the amount of $459,939. Janopaul acknowledged that St. Paul had already paid $385,000 for Janopaul's attorney's fees and costs, but did not subtract that amount from its requested award because St. Paul was in the process of contesting that fee award.

In a separate action ("fee arbitration case") in San Diego Superior Court, St. Paul petitioned to compel arbitration between Janopaul and St. Paul regarding the fee dispute. Assuming the parties' arguments in that action were similar to those advanced in the present

---

[2] Janopaul increased this amount by $113,945 shortly before the hearing on the reasonableness of fees, asserting additional costs not previously accounted for.

1  motion before this Court, Janopaul asserted that it was an additional insured under one or more of
2  the Sundt policies.  St. Paul claims it agreed to defend Janopaul in the consolidated case under a
3  reservation of rights and agreed to provide independent counsel pursuant to Civil Code section
4  2860.  Janopaul disagrees, stating that "St. Paul's purported reservation was not unqualified as
5  implied."

6  In the fee arbitration case, Judge Steven R. Denton granted St. Paul's petition and ordered
7  the parties into arbitration pursuant to Civil Code section 2860 on January 25, 2011. Janopaul
8  appealed this decision, and the appeal is currently pending.

9  In the consolidated case, Judge Luis R. Vargas found Janopaul was the prevailing party as
10 against Sundt, and awarded Janopaul attorney's fees in the amount of $901,085.27.  Without
11 explaining the calculations underlying this award, Judge Vargas stated: "The Trial Court has broad
12 authority to determine the amount of a reasonable fee. . . .  The Court finds these fees are
13 reasonable and were necessarily incurred." (May 9, 2011 Minute Order, *Janopaul + Block Cos.,*
14 *LLC v. Sundt Constr. Inc. Southern California* (consolidated case), SDSC Case No. GIC854799;
15 *see* Pl.'s Motion, Ex. F.)  Sundt appealed this decision, which is also still pending.

16 The present action, filed on December 28, 2010 by Janopaul in San Diego Superior Court,
17 asserts four different causes of action for breaches by St. Paul: (1) breach of written contract for
18 failure to defend; (2) breach of written contract for failure to indemnify; (3) breach of the implied
19 covenant of good faith and fair dealing for failure to defend; and (4) breach of the implied
20 covenant of good faith and fair dealing for failure to indemnify. Janopaul seeks damages,
21 attorney's fees and costs, and a declaratory judgment preventing St. Paul from seeking arbitration
22 of defense fees and costs. St. Paul removed the action to this Court based on diversity jurisdiction
23 on April 25, 2011.  (ECF No. 1.)  On July 15, 2011, St. Paul filed the instant motion for partial
24 summary judgment of Janopaul's first and second causes of action, or, in the alternative, to stay
25 this action until after the resolution of the pending appeals in the consolidated case and the fee
26 arbitration case.

27 **LEGAL STANDARD**

28 In general, a federal court's obligation to exercise the jurisdiction given them is "virtually

unflagging." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Further, the existence of a case in one court does not defeat the court's jurisdiction over the same case in another court. *See, e.g.*, *Stanton v. Embrey*, 93 U.S. 548, 554 (1877) ("the pendency of a prior suit in another jurisdiction is not a bar . . . even though the two suits are for the same cause of action.")

An exception to this general rule has been unquestionably established for actions concerning real property. In these instances, the court which first gains custody of property has the exclusive jurisdiction to proceed, and comity requires that the second-filed action must be stayed. *See, e.g.*, *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964).

As for other forms of concurrent parallel actions, there has been much debate, and no simple rule has yet emerged. To be sure, there is no rule preventing duplicative concurrent in personam actions in state and federal courts. *See, e.g.*, *Kline v. Burke Constr. Co.*, 260 U.S. 226 (1922). In certain situations however, a dismissal or stay of the federal action until the determination of a parallel action pending in state court may be warranted as a matter of discretion under the equitable doctrine of abstention. *See, e.g.*, *Colorado River*, 424 U.S. 800, 818-19 (reinstating district court's stay of proceedings because of parallel state action, and listing nonexclusive factors relevant to the determination, which it deemed appropriate only in "exceptional circumstances.")[3]

However, *Colorado River*'s somewhat limiting "exceptional circumstances" test may not always govern a district court's decision whether to dismiss or stay an action pending a final

---

[3]These factors include: "the inconvenience of the federal forum"; "the desirability of avoiding piecemeal litigation"; and "the order in which jurisdiction was obtained by the concurrent forums." *Colorado River*, 424 U.S. 800, 818. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Id.* Although often referred to as "*Colorado River* abstention," some have argued that the term "abstention" is a misnomer because the authority to stay a federal action until the determination of a similar action in state court is quite different from typical abstention, in that it does not require the parties to institute a second action. *See, e.g.*, American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts, Commentary at 297; *see also* Note, Power to Stay Federal Proceedings Pending Termination of Concurrent State Litigation, 59 Yale L.J. 978 (1950); *cf. Colorado River*, 424 U.S. at 817 (canvassing the recognized categories of abstention and holding that none of them applied, finding instead that the district court's action was proper on another ground, based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.")

decision in a parallel state case. In *Wilton v. Seven Falls Co.*, 515 U.S. 277, 285-86 (1995), the Supreme Court rejected the "exceptional circumstances" test in the context of a duplicative action for declaratory judgment, instead affirming the district court's stay of proceedings under the more permissive *Brillhart* decision, in which the Court found "district courts have substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings (and need not point to 'exceptional circumstances' to justify their actions)." (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942)). The Supreme Court's decision to distinguish *Colorado River* was based in large part upon the unique breadth of a federal court's discretion to enter or decline to enter a declaratory judgment. *Wilton*, 515 U.S. at 287. Thus, in the declaratory judgment context, at least, "the normal principal that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288.

In sum, it is clear that district courts have some discretion to stay duplicative actions, but the scope of this discretion is somewhat amorphous. Perhaps for this reason, in such circumstances involving parallel proceedings in state court a stay may be preferable to a dismissal. *Id.* at 288 n.2. Not only is a stay less prejudicial, but it is also well recognized that district courts have broad discretion to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.") However, the Court notes that, in a practical sense, there may be little difference between a stay and a dismissal in these circumstances because either way the final state court decision will have preclusive effect.

## ANALYSIS

Without stating it expressly or devoting more than a few pages of its moving papers to the argument, St. Paul's motion to stay invokes the *Colorado River* doctrine. St. Paul argues generally that the Court has the discretionary power to stay proceedings and that the exercise of that discretion would be appropriate here, citing *Colorado River*. (Def.'s Motion 8.) St. Paul contends

that Janopaul has already asserted all of the claims it brings in this action, now framed as breach of duty claims for failure to adequately defend, as arguments in the pending state court proceedings, and that the Court's ruling in the present action would risk inconsistency. (Def.'s Reply 7.) Janopaul counters that the actions pending in state court do not cover the same claims, and "more importantly, that those matters are on appeal and being vigorously litigated . . . and are therefore not even remotely certain in outcome or timing." (Pl.'s Opp'n 4.) Janopaul argues that the current action for "bad faith breach of the covenant of good faith and fair dealing on an insurance contract due to delay tactics" is not duplicative of the state actions, which pertain exclusively to the award of attorney's fees, not damages caused by St. Paul's failure to defend. (*Id.*)

**1. The Present Action is Duplicative of Pending State Court Litigation**

Courts seem to be in general agreement that, as an initial matter, the "*Colorado River* doctrine" can only apply where the pending state proceedings are truly duplicative of, or parallel to, the federal action. The state and federal proceedings need not be identical to be parallel. *See, e.g.*, *Fox v. Maulding*, 16 F.3d 1079 (10th Cir. 1994) (proceedings are considered parallel for purposes of the *Colorado River* doctrine where substantially the same parties are contemporaneously litigating substantially the same issues in federal and state courts.); *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) ("[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case.")

Clearly, the pending state court actions are related to the present action. Janopaul seeks payment from St. Paul pursuant to an insurance policy. The parties dispute how much, if anything, St. Paul has already paid to Janopaul as reimbursement for Janopaul's attorney's fees in litigating the consolidated case. The parties dispute the adequacy of any amount already paid. And the parties dispute how this dispute should be resolved. All of these disputes have been adjudicated in San Diego Superior Court, pending appeal. These disputed issues are at least highly relevant to this Court's resolution of Janopaul's current breach of duty claims against St. Paul. However, the Court must determine if the present case is truly duplicative of those pending actions.

//

//

*(A) Substantially the Same Parties*

Here, the parties in the fee arbitration case and the present action are the same–Janopaul and St. Paul. St. Paul initiated the fee arbitration case against Janopaul, and Janopaul later initiated the present case against St. Paul, who then removed the case to this Court. The parties in the consolidated case are slightly different. Janopaul and Sundt were parties in that action, but St. Paul was not a named party. However, pursuant to defense and indemnity claims tendered to St. Paul by Sundt, St. Paul defended Sundt throughout that action.

In asserting that St. Paul and Sundt are not interchangeable parties for the purposes of the present action, Janopaul argues that Sundt's obligations to Janopaul differ from the obligations owed by St. Paul. (Pl.'s Opp'n 6.) In this respect, Janopaul is correct. In the context of St. Paul's breach of duty to defend and indemnify Janopaul in the consolidated action, which is at issue in the present case, any award in favor of Janopaul against Sundt in that action is not interchangeable, even if paid fully by St. Paul. However, in determining the amount of fees Janopaul reasonably incurred in the consolidated action, also at issue in the present case, Sundt and St. Paul are substantially equivalent.

For these reasons, the Court concludes that the parties in the pending state actions are substantially the same. They are identical for all purposes with respect to the fee arbitration case, and interchangeable with respect to the issue of Janopaul's fees in litigating the consolidated case, which is the substantially duplicative aspect of that case to the present action.

*(B) Substantially the Same Issues*

The present action, often referred to as a "bad faith" suit in the insurance context, involves a question of the proper interpretation of an insurance policy in order to find the existence of a duty. If a duty exists, the court must determine whether that duty was breached. If a breach occurred, the court must finally determine the extent of the breach, including whether it was in good faith or bad faith, and award damages accordingly. *See, e.g.*, *Noghrey v. Charter Oak Fire Ins. Co.*, 1994 WL 669863 at *5 (N.D. Cal. 1994).

//

//

In determining whether this action is substantially similar to the pending state court actions, the Court views the decision of the state court on this same issue persuasively. In the state court's order in the fee arbitration case, Judge Denton stated:

> The entire fee dispute will proceed to arbitration. Most of the arguments in defendants' supplemental briefing have already been rejected by this Court. The recent filing of the "bad faith" action (Janopaul + Block Companies, LLC, Et Al. v. St. Paul Fire and Marine Insurance Company, SDSC Case No. 2010-00106789) does not alter this Court's determination. The gravamen of the new action is St. Paul's failure to accept tender in a timely manner, and the failure to pay defense fees at the full amount billed by Golub & Morales. Thus, the new action simply recasts the same contentions. Any delay in accepting tender may affect the hourly rate St. Paul will be compelled to pay, and this will be adjudicated in the fee arbitration proceeding.

(January 25, 2011 Minute Order, *St. Paul Fire and Marine Ins. Co. v. Janopaul + Block Cos. LLC* (fee arbitration case), SDSC Case No. 2010-00094324; *see* Motion, Ex. G.) The "bad faith" case referenced by Judge Denton is the underlying action to the instant motion. Thus, in finding that "the new action simply recasts the same contentions" as the fee arbitration case, and that the relief sought in the present action is available in the fee arbitration proceeding, the state court articulated that the issues are substantially the same in both actions. The Court agrees.

In the state court proceedings, the parties asserted the same arguments with reference to the same evidence. Although the claims are not presented in the same procedural posture, all of the disputed facts relevant to the determination of these claims will be decided by the resolution of the state court actions. The amount of attorney's fees Janopaul expended in defending the consolidated case, St. Paul's duty to defend and indemnify Janopaul in that consolidated case, and the extent to which St. Paul adequately performed or breached any of its duties to Janopaul, will all be conclusively determined in the state court actions, and those determinations would have a res judicata effect upon this Court.

For these reasons, the Court finds that substantially the same parties are litigating almost identical issues in state court and this Court. Janopaul cites absolutely no authority to counsel a different result. Accordingly, the Court finds the state court actions are parallel and duplicative for the purposes of the application of the *Colorado River* doctrine to this case.

//

**2. Staying the Present Action to Avoid Duplicative Litigation is Appropriate**

Next, the Court must determine whether a stay of the proceedings before this Court is appropriate under the *Colorado River* doctrine. Arguably, a more deferential standard should apply to at least part of the instant action, given that Janopaul seeks a declaratory judgment. *See Wilton*, 515 U.S. at 285-88 (rejecting *Colorado River*'s "exceptional circumstances" test in the context of a duplicative action for declaratory judgment, instead holding that "district courts have substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings (and need not point to 'exceptional circumstances' to justify their actions).")[4] However, neither party has clearly argued in favor of the application of this broader standard here. Further, given the unsettled nature of jurisprudence interpreting the *Colorado River* doctrine, and the fact that Janopaul also seeks other forms of relief beyond a declaratory judgment, the Court will apply the more limiting "exceptional circumstances" test set forth in *Colorado River*.

In applying *Colorado River*'s exceptional circumstances test, courts and commentators have articulated many different factors for consideration.[5] Perhaps most comprehensively, the Seventh Circuit has set forth ten factors that a federal court should apply in deciding whether exceptional circumstances exist that would justify deference to state courts under the *Colorado River* doctrine. *Caminiti & Iatorola v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir. 1991). These factors are: whether the state has assumed jurisdiction over any property involved; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; the order in which jurisdiction was obtained by the concurrent forums; the source of governing law, state or federal; the adequacy of the state court forum to protect the plaintiff's federal rights; the relative

---

[4]In further support of a deferential standard, one of the few cases cited by either party is a Ninth Circuit opinion articulating district courts' broad discretion to enter stays pending concurrent state actions. *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.") (*See also* Def.'s Motion 8.)

[5]*See* Howard A. Davis, Slowing the Flow of *Colorado River*: The Doctrine of Abstention to Promote Judicial Administration, 77 Ill. Bar J. 648 (1989).

progress of state and federal proceedings; the presence or absence of concurrent jurisdiction; the availability of removal; and the vexatious or contrived nature of the federal claim. *Id.*; *see also U.S. v. Gila Valley Irr. Dist.*, 1992 WL 66650 at *1 (9th Cir. Apr. 3, 1992) (listing at least eight of these factors). Here, the Court finds that an analysis of these factors, in addition to other principles of wise judicial administration, weigh in favor of granting a stay in the present action.

Addressing these factors in turn, the Court notes as an initial matter that several of the factors are inapplicable or unpersuasive here. First, the state court has not assumed jurisdiction over any property involved. Second, the Court declines to consider the availability of removal, as the record does not clearly show whether either pending state action could have been removed to federal court, and in any event the time for removal has long passed.[6] Third, concurrent jurisdiction is completely present here, and either court would have jurisdiction to fully resolve the claim at issue. This action was first brought in state court, and was removed to this Court pursuant to diversity jurisdiction. Thus, there are no elements of exclusive state or federal jurisdiction to consider. Before proceeding with its analysis of the remaining factors, the Court also notes that neither party has attempted to apply or discuss the *Colorado River* factors in their moving papers.

*(A) The inconvenience of the federal forum*

The federal forum of the Southern District of California is not inconvenient, considering both pending state actions and the present action originated in San Diego Superior Court. Thus, this factor is the lone factor weighing against a stay of the present action.

*(B) The desirability of avoiding piecemeal litigation*

Here, the threat of piecemeal litigation is great. As Janopaul admits, the issue of how much St. Paul has already paid, and how much it still owes Janopaul for reimbursement of attorney's fees is being actively contested and is currently pending in state court. (Pl.'s Opp'n 5.) In continuing to adjudicate these issues, the state court will need to determine the amount of fees already paid and the duty St. Paul owed Janopaul. As Judge Denton stated in his decision granting arbitration, the extent to which St. Paul breached its duty to Janopaul, which is at the heart of the

---

[6]*See* 28 U.S.C. § 1446(b) (petition for removal must be filed within 30 days after defendant is served in the original action).

1  present action, will be at issue in the arbitration of the fee dispute.  The Superior Court has
2  adjudicated both actions, and both are pending appeal.  For this Court to proceed simultaneously
3  with those appeals, which involve the same factual and legal issues, would risk inefficient and
4  wasteful litigation, with the potential of inconsistent determinations of the issues.  This factor
5  heavily favors a stay of the present action.

6  *(C)  The order in which jurisdiction was obtained by the concurrent forums*

7       The state court was the first court to acquire jurisdiction to deal with the issue of unpaid
8  attorney's fees by at least several months.  The consolidated case is many years old, and Janopaul
9  filed its motion for recoupment of its outstanding attorney's fees on December 17, 2010.  The
10 Superior Court awarded fees on May 9, 2011.  St. Paul filed the fee arbitration case on June 17,
11 2010, and the Superior Court's decision was issued on January 25, 2011.  The present action was
12 filed on December 28, 2010, and was removed to this Court on April 25, 2011.  Therefore, this
13 factor also favors a stay.

14 *(D)  The source of governing law*

15      The source of governing law for this and all related actions is California law.  The absence
16 of federal law claims in this case removes one concern which might otherwise override
17 considerations such as avoiding piecemeal litigation.  This weighs in favor of a stay.

18 *(E)  The adequacy of the state court forums to protect plaintiff's federal rights*

19      The proceedings in state court will adequately protect plaintiff's rights.  These proceedings
20 will fully adjudicate the issue of any outstanding attorney's fees owed to Janopaul.  The fee
21 arbitration will necessarily deal with the fee dispute between Janopaul and St. Paul.  As Judge
22 Denton noted, the fee arbitration ordered by the state court will take into account any breaches by
23 St. Paul in its duty to Janopaul, and can therefore afford Janopaul the relief it seeks here.
24 Although Janopaul clearly disapproves of the method of resolution chosen by the state court, that
25 of arbitration, it has not raised any arguments that state court in general is an inadequate forum.  In
26 fact, such an argument would be difficult for Janopaul to assert, as it initially brought this matter in
27 state court.  This third, duplicative action is not the proper avenue for Janopaul to dispute the state
28 //

court's decision to order arbitration of the fee dispute. The proper avenue for that is a direct appeal of that decision, which is currently pending. This factor favors a stay.

*(F)  The relative progress of the state and federal proceedings*

The only proceedings in this Court have been the removal of the complaint, two conferences before Magistrate Judge McCurine, Jr., and St. Paul's present motion for summary judgment or for a stay. The state court actions, by contrast, have proceeded to decisions by the Superior Court, and are both pending appeal. Thus, the state proceedings have progressed much farther than the present action, favoring a stay.

*(G)  The vexatious or contrived nature of the federal claim*

Both parties impute a vexatious intent to the other's actions in this case. St. Paul argues that Janopaul filed this suit in state court to improperly contest the state court's adverse determination in the fee arbitration case, while Janopaul argues that St. Paul's motives in removing the action to federal court are suspect, especially given it now requests a stay of these federal proceedings. Without more evidence, the Court declines to impute improper motives to either party. However, without presuming the motives of either party, the Court does not see any reason why all of Janopaul's instant claims cannot be part of the presently pending state court actions, as confirmed by Judge Denton's order. Because the issue of St. Paul's duty and breach of that duty will be determined in the state proceedings, this federal suit is contrived. Thus, this factor weighs in favor of a stay as well.

In sum, the gravamen of the *Colorado River* analysis favors the stay of this action. The advantages obtained by staying this action greatly outweigh the disadvantages. To resolve the question of St. Paul's duty to defend and indemnify Janopaul in this Court, when similar issues involving the same evidence and essentially the same parties are pending in state court, the litigation of those issues is much farther advanced in state court, and no issue of federal law exists, concerns the Court. Accordingly, the Court finds that it is in the interests of sound judicial administration, with respect to both the conservation of judicial resources and the comprehensive disposition of the litigation, to stay the present action pending final judgments in the parallel state actions.

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant's motion to stay pending the resolution of the pending state court actions**.**  This stay is conditioned upon assurances that the pending state court actions proceed with diligence and efficiency.  Therefore, the parties **SHALL FILE** a joint report with the Court <u>every three months</u> as to the status of the actions pending in state court, and **SHALL NOTIFY** the Court upon the rendering of a final judgment in these actions.  Pursuant to this stay, the Court **DECLINES TO RULE** on Defendant's motion for summary judgment.

**IT IS SO ORDERED**.

DATED: November 16, 2011

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge